STATE OF NORTH CAROLINA v. JOSHUA DANIEL FRIEND

No. COA03-663

(Filed 1 June 2004)

**1. Criminal Law— consolidated charges—factually similar and connected**

The trial court did not abuse its discretion in consolidating 15 charges because the offenses were all factually similar and interconnected. Defendant was not prejudiced because one count was subsequently dismissed and the jury acquitted him on 6 counts.

**2. Evidence— hearsay—business report**

There was no error in a burglary and larceny prosecution in admitting testimony that the property had not been rented and that defendant did not have permission to be on the property. The monthly business report on which the testimony was based fell under the business record exception to the hearsay rule.

**3. Witnesses— redirect examination—scope**

The trial court did not err in a burglary prosecution by allowing a line of questioning on redirect examination of a deputy which defendant contended exceeded the scope of cross-examination.

**4. Evidence— fingerprinting techniques—deputy's lay opinion**

The trial court did not err by allowing a deputy to present lay opinion testimony about fingerprinting techniques. The deputy was in charge of CID and helped the jury understand why fingerprints were not recovered.

**5. Possession of Stolen Property— constructive and recent possession—sufficiency of evidence**

There was sufficient circumstantial evidence that defendant had constructive and recent possession of stolen items from one of several houses that had been broken into.

**6. Burglary and Unlawful Breaking or Entering— no permission to enter—sufficiency of evidence**

There was sufficient evidence in a prosecution for breaking and entering, larceny, and possession of stolen goods that defendant had not had permission to enter the house.

**7. Possession of Stolen Property— constructive possession— knowledge that property was stolen—sufficiency of evidence**

There was sufficient circumstantial evidence that defendant had constructive and recent possession of a stolen bow and knew or had reason to believe that it was stolen.

**8. Possession of Stolen Property— constructive possession— sufficiency of evidence**

There was sufficient evidence to establish defendant's recent and constructive possession of stolen firearms and a bow in that the stolen property was found where defendant had been staying, along with other stolen property.

**9. Burglary and Unlawful Breaking or Entering— sufficiency of evidence—consent to enter**

There was sufficient evidence in a second breaking and entering and larceny prosecution that defendant did not have consent to enter the house.

**10. Burglary and Unlawful Breaking or Entering— evidence of another's guilt—lesser included offense—no instruction**

Evidence implicating another in a breaking and entering and larceny was evidence that defendant had committed no crime at all and did not require the submission of lesser included offenses.

**11. Burglary and Unlawful Breaking or Entering— breaking in to sleep—instructions on lesser included offenses**

Evidence in a felonious breaking and entering prosecution that defendant had admitted breaking into a house to sleep but not to commit a larceny or another felony should have resulted in an instruction on the lesser included offense of misdemeanor breaking and entering. However, defendant was not entitled to an instruction on misdemeanor larceny because any larceny that occurred pursuant to a breaking and entering is a felony regardless of the value of what was stolen.

**12. Possession of Stolen Property— instruction on lesser included offense—no conflicting evidence**

Defendant was not entitled to an instruction on the lesser included offense of misdemeanor possession of stolen goods where there was no conflicting evidence. Defendant's assertion that the jury accepted a portion of the State's case and rejected other parts of it was not sufficient.

Appeal by defendant from judgments entered 17 January 2003 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 2 March 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Leonard G. Green, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellant.*

HUNTER, Judge.

Joshua Daniel Friend ("defendant") appeals from judgments dated 17 January 2003, entered consistent with jury verdicts finding defendant guilty of two counts of felonious breaking and entering, two counts of felonious larceny, and four counts of felonious possession of stolen goods. For the reasons stated herein, we conclude defendant is entitled to a new trial on one count of felonious breaking and entering and that there was no error in his remaining convictions.

The State's evidence tends to show that all of the offenses took place within the Colington Harbor neighborhood, on Harborview Drive. 802 Harborview Drive is the residence of Tucker Freeman ("Freeman"). In early October 2001, Freeman noticed several items missing from his garage including a Coleman stove, a green backpack, a tire iron, a drill and drill bits, an x-acto box containing knives and blades, a Daisy Red Rider BB rifle, a filet knife, and a wood knife. Defendant had been coming over to Freeman's property to fish. Freeman had given defendant permission to be there.

719 Harborview Drive is a vacation rental owned by Mr. Raymond Gross ("Gross"), and one of the neighborhood residences that was broken into. The house is often rented out under the direction of real estate agent Stan White ("White"). Gross maintained that defendant did not have permission to be in his house and that he previously made defendant aware of this. Freeman witnessed defendant emerge from inside Gross's house. Later, when Gross came to inspect the house, he found some items, such as his stove and ash tray, had been used. Later, it was discovered that several bottles of liquor had been stolen from this house. One particular bottle of Bacardi liquor had been purchased from a Class Six store at Langley Air Force Base. On this bottle was a sticker reading "AAFES." At the time of his arrest, defendant admitted having gone into Gross's house to find a place to

sleep, telling the arresting officer " 'I did go into that house . . . but I just went there so I could have a place to sleep.' "

Michael Creekmore ("Creekmore") lives at 701 Harborview Drive. On 13 or 14 October 2002, Creekmore noticed his Hoyte compound bow was missing from his garage. William Walker ("Walker") lives at 605 Harborview Drive. Walker's son Joseph testified that the Walkers kept a black powder rifle, a hunting rifle, and a compound bow in their storage area underneath the house and that these items had been stolen.

James Trent ("Trent") is the caretaker of 471 Harborview Drive, a vacation home. On 20 October 2002, Trent went to the house to do some maintenance work and found that the back door had been kicked in, the kitchen was messy, and sodas and canned goods were missing. The downstairs bedroom was in disarray. Inside the bedroom was a green backpack, liquor bottles, a Hoyte compound bow, a Pearson compound bow, a parka jacket, a Coleman stove, and a green and brown nylon wallet with a chain attached to it.

One of the liquor bottles found in 471 Harborview Drive was identified by its "AAFES" sticker as having been stolen from Gross's house. Detectives testified that the parka resembled one they had seen defendant wearing on several occasions. The green backpack matched the description of the one Freeman saw on defendant's back when defendant was leaving the inside of Gross's house. The Coleman camping stove matched the description of Freeman's stolen stove, as did some of the knives. The Hoyte compound bow matched the one stolen from Creekmore's residence.

The green and brown nylon wallet had an Albermarle Mental Health Center appointment card inside with defendant's name on it. Detectives also testified that they had seen defendant carrying a similar-looking wallet in the past.

Elizabeth Quinlan ("Quinlan") lives at 715 Harborview Drive. She allowed defendant to stay in her house. Underneath the Quinlan home is an accessible lattice-enclosed area. On 16 October 2002, Freeman found items matching the description of some of his missing items in this lattice-enclosed area including: his x-acto box, Daisy BB rifle, and filet knife. Freeman also found other stolen property under the lattice-enclosure including a case with the name "Bill Walker" on it, containing a Remington rifle and scope, a Connecticut Valley black powder rifle, a Pearson compound bow, and a Nova compound bow.

Another hunting rifle and bow were recovered directly from Billy Thompson ("Thompson") who also lives at Quinlan's residence. The evidence tends to show that Thompson is mentally impaired and had trouble performing basic tasks. Thompson turned over the rifle and bow after Quinlan told him to give up any property that he did not buy or that George (another resident of the house) had not given to him.

Prior to jury selection in Dare County Superior Court, the trial court granted the State's motion to consolidate all of the charges against defendant for trial. As a result, defendant was tried on one count of second degree burglary, four counts of felonious breaking and/or entering, five counts of felonious larceny, and five counts of felonious possession of stolen goods.

The State relied heavily on the doctrines of recent and constructive possession in trying their case. On 5 September 2002, following trial by jury, defendant was found guilty of two counts of felonious breaking and entering, two counts of felonious larceny and four counts of felonious possession of stolen goods. Defendant was found not guilty of the remaining charges submitted to the jury. As a consequence of his convictions, defendant was sentenced to four consecutive eight to ten month prison terms followed by a fifth consecutive eight to ten month sentence, which was suspended upon defendant's successful completion of thirty-six months supervised probation.

The six issues presented on appeal are whether the trial judge erred by (I) joining all of the charges against defendant into one trial; (II) allowing the State to prove its case using hearsay testimony; (III) allowing the State to examine Deputy Neiman on certain matters during re-direct examination; (IV) allowing Deputy Doughtie to offer certain testimony as to fingerprinting techniques; (V) denying defendant's motion to dismiss all of the charges against him at the close of evidence; and (VI) failing to instruct the jury on the lesser-included misdemeanor offenses requested by defendant.

I.

[1] Defendant alleges the trial court erred when it allowed the State to consolidate all of the charges against defendant into one trial. N.C. Gen. Stat. § 15A-926(a) provides that two or more offenses may be joined for trial when the offenses are based on the same act or transaction or on a series of acts or transactions connected together constituting parts of a single plan or scheme. *See State v. Cummings*, 103

N.C. App. 138, 140-41, 404 S.E.2d 496, 498 (1991). The decision to join cases for trial is within the trial court's discretion, and a trial judge's decision to join cases for trial will only be reversed if defendant was denied a fair trial. *See State v. Ruffin*, 90 N.C. App. 712, 714, 370 S.E.2d 279, 280 (1988).

This Court has recognized that the determination to be made is " 'whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant.' " *State v. Fultz*, 92 N.C. App. 80, 83, 373 S.E.2d 445, 447 (1988) (quoting *State v. Corbett*, 309 N.C. 382, 389, 307 S.E.2d 139, 144 (1983)). In this case, save for one instance, all of the charged offenses were committed on or about September and October 2001 and in the same neighborhood on Harborview Drive. Thus, we conclude the trial court did not abuse its discretion in consolidating the charges because the offenses were all factually similar and interconnected.

Defendant also alleges that the large number of charges brought against defendant alone prevents him from receiving a fair trial when all were joined in the same action. However, this Court in *State v. Harding* affirmed a trial court's decision to consolidate even when the defendant was charged with "almost 15" separate indictments. *State v. Harding*, 110 N.C. App. 155, 161-62, 429 S.E.2d 416, 420-21 (1993). The trial judge in *Harding* even commented about the " 'unbelievably complicated spider web . . . ' " created by the various allegations and indictments. *Id.* This Court concluded that since the charges were closely related in time and nature under the circumstances, joinder was proper and that defendant had nevertheless failed to show any prejudice. *Id.*

In the case before us, in addition to the factual similarity and interconnected nature of the charges, the record tends to show that defendant was not prejudiced by the joining of the fifteen charges as even after the trial court dismissed one count of possession of stolen property the jury still acquitted defendant of six of the remaining fourteen charges.

## II.

**[2]** Defendant next argues the trial court erred when it allowed Gross to testify over objection of defense counsel that defendant did not have permission to be on Gross's property and that his property had not been rented out since October 5th. Specifically, defendant argues

that Gross's testimony was based on hearsay statements contained in a monthly report sent to him by White. The record shows that defense counsel did not object to Gross's testimony until later in the direct examination, when Gross explained that White kept him apprised of when the house was rented.

The State contends the monthly report qualifies as a business record under the records of regularly conducted activity exception to the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2003). Under this exception:

> Business records are admissible as an exception to the hearsay rule if "(1) the entries are made in the regular course of business; (2) the entries are made contemporaneously with the events recorded; (3) the entries are original entries; and (4) the entries are based upon the personal knowledge of the person making them."

*Piedmont Plastics v. Mize Co.*, 58 N.C. App. 135, 137, 293 S.E.2d 219, 221 (1982) (quoting *Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 650, 217 S.E.2d 682, 699 (1975)).

In this case, the monthly business report that White sends to Gross qualifies under the business record exception because White recorded the rental entries based on personal knowledge and in the regular course of his business at the times that the property was rented. Therefore, defense counsel's hearsay objection as to Gross's testimony fails. *See* N.C. Gen. Stat. § 8C-1, Rule 803(6).

III.

[3] Deputy Neiman was the primary investigating officer for the various Harborview offenses. During Deputy Neiman's cross-examination, defense counsel asked him several questions about his movements and observations while he was investigating the downstairs bedroom of 471 Harborview Drive. On re-direct examination, the State questioned Deputy Neiman as to what he did when he went downstairs to the bedroom, specifically whether Neiman had examined the downstairs room window. Defendant claims this line of questioning exceeded the scope of cross-examination and unfairly prejudiced the defense.

"[R]edirect examination is usually limited to clarifying the subject matter of the direct examination, and dealing with the subject matter brought out on cross-examination. It is in the discretion of the trial

court to permit the scope of the redirect to be expanded." *State v. Pearson*, 59 N.C. App. 87, 89, 295 S.E.2d 499, 500 (1982) (citation omitted). In this case, as Deputy Neiman's downstairs movements were inquired into on cross, further exploring what he did downstairs on re-direct is permissible. Moreover, even if the questioning somehow exceeded the scope of the cross-examination, it was in the trial court's discretion to allow the scope of re-direct examination to be expanded. Further, defendant has failed to show how he was prejudiced by this line of questioning as he is required to do under N.C. Gen. Stat. § 15A-1443(a) (2003). We therefore conclude the trial court did not err by allowing this re-direct examination of Deputy Neiman.

## IV.

[4] Defendant further contends that the trial court improperly allowed the State to introduce lay witness testimony concerning fingerprinting techniques. Deputy J. D. Doughtie ("Doughtie") was in charge of the Criminal Investigations Division of the Dare County Sheriff's Department when the various Harborview offenses took place. At trial, Doughtie was never qualified as an expert witness. However, a lay witness may still testify to his opinions, which are rationally based on his perceptions and helpful to a clear understanding of his testimony of the determination of a fact in controversy. N.C. Gen. Stat. § 8C-1, Rule 701 (2003). Also:

> Although a lay witness is usually restricted to facts within his knowledge, "if by reason of opportunities for observation he is in a position to judge . . . the facts more accurately than those who have not had such opportunities, his testimony will not be excluded on the ground that it is a mere expression of opinion."

*State v. Lindley*, 286 N.C. 255, 257-58, 210 S.E.2d 207, 209 (1974) (citations omitted) (quoting *State v. Brodie*, 190 N.C. 554, 130 S.E. 205 (1925)).

While testifying, Doughtie explained why it is rare to find useful fingerprints and why it is unnecessary to conduct a search for fingerprints when eyewitnesses are involved. As the officer in charge of the Criminal Investigations Division, Doughtie was in a position to review the surrounding facts more accurately than anyone else and his testimony aided the jury in understanding why fingerprints were not recovered from the stolen property in this case. As such, the trial court did not err in allowing Doughtie to present his lay opinion testimony regarding fingerprinting techniques.

V.

Defendant argues that his motion to dismiss should have been granted because the State failed to carry its burden of proof in proving the various offenses. "In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E.2d at 169. In ruling on a defendant's motion to dismiss, the evidence is viewed in the light most favorable to the State and the State is allowed every reasonable inference. *See id.*

In this case, defendant was convicted of felonious breaking and entering, felonious larceny, and felonious possession of stolen goods. "The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Litchford*, 78 N.C. App. 722, 725, 338 S.E.2d 575, 577 (1986). The crime of larceny requires the " ' "taking by trespass and carrying away by any person of the goods or personal property of another, without the latter's consent and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use." ' " *State v. Boykin*, 78 N.C. App. 572, 576, 337 S.E.2d 678, 681 (1985) (citations omitted). The crime of larceny is a felony without regard to the value of the property where, *inter alia,* the larceny is committed pursuant to a breaking or entering, N.C. Gen. Stat. § 14-72(b)(2) (2003), or if the property stolen is a firearm, N.C. Gen. Stat. § 14-72(b)(4). A person is guilty of felonious possession of stolen goods if that person possesses goods stolen or taken pursuant to a larceny or felony and that person knows or has reasonable grounds to believe the property was taken or stolen pursuant to a felony. N.C. Gen. Stat. § 14-71.1 (2003); *see also* N.C. Gen. Stat. § 14-72(c) (2003).

The doctrine of recent possession " 'allows the jury to infer that the possessor of certain stolen property is guilty of larceny.' " *State v. Osbourne*, 149 N.C. App. 235, 238, 562 S.E.2d 528, 531, *per curiam aff'd*, 356 N.C. 424, 571 S.E.2d 584 (2002) (quoting *State v. Pickard*, 143 N.C. App. 485, 487, 547 S.E.2d 102, 104 (2001)). This Court has also explained that under the doctrine of recent possession, the State must show three things: "(1) that the property was stolen; (2) that defendant had possession of this same property; and (3) that defendant had possession of this property so soon after it was stolen and

under such circumstances as to make it unlikely that he obtained possession honestly." *Id.*

Under the doctrine of constructive possession, " '[p]roof of nonexclusive, constructive possession is sufficient.' " *Id.* (quoting *State v. Matias,* 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001)). In fact, " '[w]here sufficient incriminating circumstances exist, constructive possession of the [property] may be inferred even where possession of the premises is nonexclusive.' " *Id.* at 239, 562 S.E.2d at 531 (quoting *State v. Kraus,* 147 N.C. App. 766, 770, 557 S.E.2d 144, 147 (2001)).

While most of the State's evidence is circumstantial, that alone will not allow a motion to dismiss to be granted. *See State v. Stokesberry,* 28 N.C. App. 96, 98, 220 S.E.2d 214, 216 (1975). As discussed below, we conclude the evidence submitted by the State was sufficient to survive a motion to dismiss on all of the charges.

## 802 Harborview Drive

[5] Defendant was convicted of felonious possession of stolen goods from Freeman's residence at 802 Harborview Drive. Defendant contends that there is insufficient evidence to establish that he had either constructive or recent possession of the goods and further that there is no evidence that he knew or had reason to believe that the items were stolen pursuant to a breaking or entering.

The State's evidence tends to show that in early October 2001, Freeman noticed that a number of items, including a green backpack, BB gun, a Coleman stove, and various knives and blades, were missing from his garage. Several of these items were found under Quinlan's home, where defendant stayed, on 16 October 2001 including the BB gun and knives. On 20 October, the remaining items including the backpack and stove were found at 471 Harborview Drive along with a jacket and wallet, both of which were similar to items observed to have been possessed by defendant. In addition, the wallet contained a card identifying defendant and defendant had been seen wearing the green backpack. We conclude that this is sufficient circumstantial evidence that defendant had constructive and recent possession of the items stolen from 802 Harborview Drive following their disappearance. Moreover, the fact that the items stolen from Freeman were located along with other items stolen pursuant to separate breaking and entering incidents, and evidence defendant had accessed 471 Harborview Drive, where several of Freeman's items

were found, via a breaking and entering is circumstantial evidence that defendant knew, or had reason to believe, that the items he possessed were obtained through a breaking and entering.

### 719 Harborview Drive

[6] Defendant was convicted of felonious breaking and entering, felonious larceny, and felonious possession of stolen goods from 719 Harborview Drive, namely bottles of liquor. Defendant contends only that the State failed to prove he did not have permission to access 719 Harborview Drive. He relies on his argument addressed above that the only evidence that he had no permission to enter was inadmissible hearsay. As we have already rejected this argument, we need not address it here. We do note, however, that Gross, the owner of 719 Harborview Drive, maintained that defendant did not have permission to enter the property and the stolen liquor bottles were later found in defendant's constructive and recent possession. Furthermore, defendant admitted at the time of his arrest to having broken into the house.

### 701 Harborview Drive .

[7] Defendant was convicted of the felonious possession of a stolen Hoyte compound bow from Creekmore's garage at 701 Harborview Drive. This item was recovered from 471 Harborview Drive, the site of another break-in linked to defendant, along with other stolen property and defendant's wallet and parka. As we have discussed above, this is substantial circumstantial evidence that defendant had constructive and recent possession of the stolen bow, and did so knowing, or having reason to believe that it was stolen during a breaking and entering.

### 605 Harborview Drive

[8] Defendant was convicted of feloniously possessing stolen goods from the Walker's residence at 605 Harborview Drive. These items included a black powder rifle, a hunting rifle and scope, and a compound bow. These items were recovered from Quinlan's residence where defendant had been staying. They were initially found by Freeman who discovered his own stolen property and noticed a case with Walker's name on it. We conclude that evidence the Walker's property was found in the location defendant had been staying, along with other stolen property belonging to Freeman and linked to defendant through his constructive possession of other items stolen from Freeman and found at 471 Harborview Drive, is sufficient to

establish defendant's recent and constructive possession of Walker's stolen firearms and compound bow for purposes of surviving a motion to dismiss.

### 471 Harborview Drive

[9] Defendant was convicted of felonious breaking and entering and felonious larceny at 471 Harborview Drive. Trent, the property's caretaker, testified that defendant did not have permission to enter the house. He further testified that on 20 October 2001 when he arrived at the property, a door had been kicked in and it appeared someone had tried to gain entry through a window by using a BB gun. Inside, the house was in disarray and various canned goods and sodas were missing. In addition, he found a number of the items stolen from other residences and the items linked to defendant. Defendant contends only that there was insufficient evidence that he did not have permission to enter the house at 471 Harborview Drive. However, the evidence that defendant did not have permission to enter and managed only to do so through kicking in a door and entering through a locked window is sufficient to support a finding that he did not have consent to enter 471 Harborview Drive. Accordingly, the trial court did not err in denying defendant's motion to dismiss all the charges.

### VI.

The trial court refused defendant's motion to instruct the jury on the lesser-included offenses of misdemeanor breaking and entering, misdemeanor larceny, and misdemeanor possession of stolen goods in all of the charges against him except in one instance where the trial judge instructed on both felonious and non-felonious breaking or entering and larceny.

" 'In North Carolina, a trial judge must submit lesser included offenses as possible verdicts, even in the absence of a request by the defendant, where sufficient evidence of the lesser offense is presented at trial.' " *State v. Lowe*, 150 N.C. App. 682, 686, 564 S.E.2d 313, 316 (2002) (quoting *State v. Owens*, 65 N.C. App. 107, 110, 308 S.E.2d 494, 497 (1983)). "[T]he trial court is not required to submit lesser degrees of a crime to the jury 'when the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the charged crime.' " *State v. McKinnon*, 306 N.C. 288, 301, 293 S.E.2d 118, 126 (1982) (quoting *State v. Harvey*, 281 N.C. 1, 13-14, 187 S.E.2d 706, 714 (1972)). " '[E]vidence giving rise to a reasonable inference to dispute the State's contention,' is sufficient to support an instruction on a

lesser offense." *State v. Hargett*, 148 N.C. App. 688, 692, 559 S.E.2d 282, 286 (quoting *State v. McKinnon*, 306 N.C. at 301, 293 S.E.2d at 127), *disc. review improvidently allowed*, 356 N.C. 423, 571 S.E.2d 583 (2002).

## Breaking and Entering and Larceny

**[10]** Defendant contends he was entitled to jury instructions on the lesser included offenses of misdemeanor breaking and entering and. misdemeanor larceny with respect to his conviction related to the 719 Harborview Drive property owned by Gross. Specifically, defendant contends there was conflicting evidence implicating Billy Thompson in the breaking and entering and larceny, as Thompson had been seen wandering the neighborhood and that two stolen items were recovered directly from him. This is not, however, evidence requiring the submission of the lesser included offenses, but rather evidence that defendant committed no crime at all. *See State v. Black*, 21 N.C. App. 640, 644, 205 S.E.2d 154, 156, *aff'd*, 286 N.C. 191, 209 S.E.2d 458 (1974) (evidence defendant committed no crime at all does not support the submission of lesser included offenses to the jury).

**[11]** However, we note that although defendant has not raised this argument before this Court, there was evidence in the record in that defendant admitted breaking into the 719 Harborview Drive property owned by Gross but did so solely with the intention of finding a place to sleep, not to commit a larceny or other felony. *See* N.C. Gen. Stat. § 14-54 (2003). This evidence necessitates an instruction on the lesser included offense of misdemeanor breaking and entering and entitles defendant to a new trial solely on this charge. As to the larceny charge, however, defendant was not entitled to an instruction on misdemeanor larceny as the evidence is uncontradicted that if a larceny occurred at 719 Harborview Drive, it occurred pursuant to a breaking and entering, whether felonious or misdemeanor, making any such larceny a felony. *See* N.C. Gen. Stat. 14-72(b)(2) (providing that any larceny committed pursuant to N.C. Gen. Stat. § 14-54, the statute governing both felonious and misdemeanor breaking and entering, is a felony without regard to the value of items stolen). Therefore, defendant is entitled to a new trial solely on the charge of felonious breaking and entering in case number 01CRS 51215.

## Possession of Stolen Goods

**[12]** Defendant also contends that the trial court was required to submit the lesser included offense of misdemeanor possession of stolen

**STATE v. FRIEND**

[164 N.C. App. 430 (2004)]

goods to the jury in each case. Specifically, defendant contends that there was insufficient evidence that he knew or had reason to believe the stolen property was obtained pursuant to a breaking or entering. Defendant, however, presented no conflicting evidence that he did not know or did not have reason to believe the items were stolen pursuant to a breaking or entering. *Compare Hargett*, 148 N.C. App. at 692, 559 S.E.2d at 286 (defendant entitled to instruction on misdemeanor possession of stolen goods where defendant presented evidence that the items had been given to him by a third person).

Instead, in this case, defendant relies solely on his assertion that the jury accepted a portion of the State's case and rejected other parts of the State's case by acquitting him of some breaking and entering charges. "The mere contention that the jury might accept the State's evidence in part and might reject it in part is not sufficient to require submission to the jury of a lesser offense." *Black*, 21 N.C. App. at 643-44, 205 S.E.2d at 156. Thus, under the State's evidence, if defendant possessed stolen property, he did so with the knowledge, or reason to believe, the property was stolen pursuant to a breaking or entering. *See id.* Therefore, defendant was not entitled to an instruction on the lesser included offense of misdemeanor possession of stolen goods where there was no conflicting evidence. Accordingly, because defendant was entitled to an instruction on the lesser included offense of misdemeanor breaking and entering, we grant defendant a new trial on the breaking and entering charge in case number 01CRS 51215, but conclude there was no error in the remaining convictions.

New trial in case number 01CRS 51215.

No error in case numbers 01CRS 51220, 02CRS 2469, 02CRS 2470, and 02CRS 2471.

Judges WYNN and TYSON concur.